UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JERRY B.,[1]                          )
                                      )
                  *Plaintiff*,        )
                                      )
         *v.*                         )         No. 1:21-cv-02177-SEB-MG
                                      )
KILOLO KIJAKAZI, Acting Commissioner of the  )
Social Security Administration,       )
                                      )
                  *Defendant.*        )

## REPORT AND RECOMMENDATION

In June 2018, Plaintiff Jerry B. applied for applied for social security income benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of May 9, 2018.  [Filing No. 8-4 at 1-14; Filing No. 8-6 at 2-8.]  His application was initially denied on October 9, 2018, [Filing No. 8-3 at 2-13], and upon reconsideration on January 25, 2019, [Filing No. 8-3 at 18-24].  Administrative Law Judge Jeanne VanderHeide (the "ALJ") conducted a hearing on November 20, 2019.  [Filing No. 8-2 at 46-70.]  The ALJ issued a decision on January 15, 2020 concluding that Jerry B. was not entitled to receive benefits.  [Filing No. 8-3 at 27-43.]  The Appeals Council granted Jerry B.'s request that they review the ALJ's decision, and on October 9, 2020, the Appeals Council issued an order remanding Jerry B.'s application for benefits back to the ALJ with instructions for the ALJ to address certain issues.  [Filing No. 8-3 at 44-50.]  The

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

ALJ held a second hearing on February 24, 2021. [Filing No. 8-2 at 31-45.] The ALJ issued a new decision on March 8, 2021, concluding once again that Jerry B. was not entitled to benefits. [Filing No. 8-2 at 10-30.] This time, the Appeals Council denied review. [Filing No. 8-2 at 2-6.] On August 4, 2021, Jerry B. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 10.] For the following reasons, the undersigned recommends that the Court remand the decision of the ALJ for further proceedings.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform his or her own past relevant

work and if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).  The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner.  *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'"  *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Jerry B. was 48 years old on May 9, 2018—the date of his alleged onset of disability—and has a high-school education.  [Filing No. 8-2 at 23.]  He has no relevant past work experience.  [Filing No. 8-2 at 23.]  Jerry B.'s original application alleges that he can no longer work because he has COPD and emphysema and a history of a collapsed lung and broken hip.  [Filing No. 8-6 at 3.]  He subsequently reported that back pain also prevents him from working.  [Filing No. 8-6 at 24.]  Following the February 24, 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Jerry B. was not disabled.  [Filing No. 8-2 at 14.]  Specifically, the ALJ found as follows:

- At Step One, Jerry B. had not engaged in substantial gainful activity[3] during the period at issue.  [Filing No. 8-2 at 15.]

- At Step Two, Jerry B. "has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), degenerative disc disease of the lumbar spine, neuropathy, right hip arthritis, and supraventricular tachycardia."  [Filing No. 8-2 at 16.]

- At Step Three, Jerry B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 8-2 at 16.]  The ALJ specifically considered Listings 1.04 (Disorders of the Spine)[4], 3.02 (Chronic Respiratory Disorders), 11.14 (Peripheral Neuropathy), and Listing 4.05 (Recurrent Arrhythmias).

- After Step Three but before Step Four, Jerry B. had the RFC "to perform light work as defined in 20 CFR 416.967(b) except sit or stand alternatively but not standing more than 20-30 minutes in [sic] before needing to sit for 10-15 minutes at a bench or stool available at the workstation; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally stoop, kneel, crouch, and crawl; occasionally exposure to extreme cold; avoid all exposure to unprotected heights; work is limited to simple, routine tasks; and must be employed in a low stress job, defined as having no fast-paced production work."  [Filing No. 8-2 at 17.]

- At Step Four, Jerry B. has no past relevant work.  [Filing No. 8-2 at 23.]

- At Step Five and relying on the VE's testimony and considering Jerry B.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform, such as hand packager, small products assembler, and visual inspector/checker.  [Filing No. 8-2 at 23-24.]

### III.
### DISCUSSION

Jerry B. argues that: (1) the ALJ's subjective symptom analysis did not comply with SSR

16-3p; (2) the ALJ did not properly evaluate the medical opinions under 20 C.F.R. § 416.920c;

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

[4] Regulations relating to Listing 1.04 were subsequently revised effective April 2, 2021.  As a result, Listing 1.04A no longer exists and was replaced by Listings 1.15 and 1.16 for spinal and nerve root disorders.

(3) the ALJ's conclusion that Jerry B. did not meet Listing 3.02 (Chronic Respiratory Disorders) is wrong; (4) the RFC (and corresponding hypothetical to the VE) is not supported by substantial evidence; and (5) the jobs identified by the VE are beyond Jerry B.'s functional capacity.

### A. Subjective Symptom Analysis

Jerry B. argues that the ALJ discredited his testimony about his subjective symptoms for impermissible reasons.  [Filing No. 14 at 8.]  He contends that the ALJ's finding that Jerry B. "received, routine conservative treatment for his allegedly disabling condition" cannot support the subjective symptom finding because the ALJ failed to "consider the reasons why [Jerry B.] may not have pursued or obtained additional treatment."  [Filing No. 14 at 8.]  He says the ALJ should have explored whether Jerry B.'s insurance would cover treatment, whether he could afford additional treatments, and whether "impaired insight and judgment" impacted his decision not to seek further treatment.  [Filing No. 14 at 8-10.]  Next, he contends that the record belies the ALJ's finding that his treatment was conservative by pointing to evidence that he was prescribed narcotics, nerve pain medicine, and received injections as treatment.  [Filing No. 14 at 10.]  He also says that he cannot undergo spine surgery because surgeons told him he cannot have surgery due to his other conditions involving his lungs and heart.  [Filing No. 14 at 10-11.]  He also argues that the ALJ's finding that Jerry B.'s symptoms had improved is insufficient to discredit his stated symptoms and that the ALJ's reference to medical providers finding Jerry B. was not in "acute distress" is consistent with his reported symptoms.  [Filing No. 14 at 11-12.]  Finally, he argues that the ALJ's failure to mention, let alone analyze, a third-party report from his friend, Jamie Sue Bryant, undermines the ALJ's subjective symptom finding.  [Filing No. 14 at 13.]

Unfortunately, the Commissioner does not squarely confront the majority of Jerry B.'s arguments regarding the ALJ's subjective symptoms analysis.  That is probably because Jerry B.

did not clearly identify the ALJ's subjective symptom analysis as an issue for appeal under the "Issues Presented" section as required by the Court's Order. [*See* Filing No. 9 at 3 ("Every opening brief shall include a statement of the 'Issues Presented.' There, Plaintiff shall briefly set forth each of the legal issues that Plaintiff wishes the Court to consider—with specific reference to the applicable 'step.'").] The Commissioner does include the following response addressing some of Jerry B.'s arguments:

> Plaintiff's brief repeatedly iterates his allegation that he spends much of his time lying down (Dkt. 14, pp. 22-23, 25), and that he frequently experienced a high degree of pain (Dkt. 14, pp. 6, 10, 11, 15-16, 21-22, 23, 24-25). Plaintiff suggests that because the ALJ did not fully credit these and other allegations, the ALJ assumed he was "untruthful" (Dkt. 14, pp. 12). However, such a jump in logic is belied by the ALJ's discussion, which describes Plaintiff's testimony regarding postural limits and timing, noting that he reported more pain with sitting than standing, as well as pain with moving around, and that he often changed positions (Dkt. 8-2 at p. 18; R. 17). When considered in light of the other evidence of record, the ALJ concluded that Plaintiff required "less prolonged sitting, not more" and a "sit-stand option to prevent back pain exacerbation from prolonged sitting, and to address evidence of minor limitations in gait" and other findings (Dkt. 8-2 at p. 22; R. 21).
>
> These conclusions were well-reasoned and show that the ALJ properly considered Plaintiff's symptoms in the context of the other available evidence of record, and did not simply assume he was being untruthful.

[Filing No. 16 at 13-14.]

In his reply, Jerry B. chastises the Commissioner for failing to address his subjective symptom arguments. [Filing No. 17 at 5.] He argues that "[b]ecause the Commissioner failed to address any of these well-reasoned arguments that the ALJ's subjective symptom analysis was patently wrong, she has waived them." [Filing No. 17 at 6.]

The threshold question is whether the Court should consider Jerry B.'s subjective symptom argument at all because of his failure to specifically list this issue in his "Issues Presented." (Unlike the other errors raised on appeal, Jerry B. also did not include a heading for this issue in his brief,

causing further confusion about the issues he intended to argue in his appeal.)  Despite these failures by Jerry B., he devoted roughly six pages to a subjective symptom argument.  [Filing No. 14 at 8-13]

The Seventh Circuit has said that a social security claimant forfeits arguments not raised and developed in his or her opening brief.  *See, e.g.*, *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016).  That is not the case here.  Jerry B. raised and developed his argument regarding subjective symptoms in his opening brief but failed to clearly list this issue in his "Issues Presented" as required by the Court's Order.  [Filing No. 9.]  Because of the importance of the issue and the thorough analysis presented in his brief, the Court is reluctant to find that the argument was forfeited and the undersigned declines to do so.[5]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012).  Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record.  *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims."  SSR 16-3p, *available at* 2017 WL 5180304, at *1.  SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character.  Instead, we will more closely follow our regulatory language regarding

---

[5] The Court reminds and cautions counsel for Jerry B. to adhere to the Court's standard order governing social security cases that requires the claimant to "set forth each of the legal issues that Plaintiff wishes the Court to consider—with specific reference to the applicable step" in the "Issues Presented" section of the opening brief.  For example, generically stating that the ALJ's "[d]ecision is premised on cherry-picked evidence and failed to provide an accurate and logical bridge to support the critical findings and conclusion," [Filing No. 14 at 2], is neither specific nor helpful.

symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ must consider all of the evidence in the record to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. When assessing credibility of a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 416.929(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or

other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

At his hearing, Jerry B. testified that it hurt to move around, that he slept maybe four hours a night, that he was unable to help with household chores, and that he spent his time laying on his couch and watching television. [Filing No. 8-2 at 37-39.] He reported that he cannot sit very long, so he lies on his side on the couch. [Filing No. 8-2 at 39.] Jerry B. also reported that he could only sit for 10-15 minutes at a time and that the most he could stand at a time was "[a]bout 20, 30 minutes." [Filing No. 8-2 at 40.] He told the ALJ that he did not do recommended physical therapy because he "can't do that. They get me in there and try to twist me all around. I went to a chiropractor a long time ago when this first started. He had me down to where I, I couldn't move at all." [Filing No. 8-2 at 39.] During the November 2019 hearing, he testified that he becomes short of breath when he attempts to complete daily tasks, like showering and dressing. [Filing No. 8-2 at 59.]

At step one, the ALJ found that Jerry B.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Filing No. 8-2 at 18.] However, at step two, Jerry B.'s "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record."

[Filing No. 8-2 at 18.] The ALJ provided the following reasons to support this finding at step two.

> As for the claimant's statements about the intensity, persistence, and limiting effects of their symptoms, they are inconsistent because the objective medical evidence of record indicates greater physical functioning than described in the hearing testimony.
>
> [T]he medical evidence of record confirms the claimant's diagnosis with lumbar spine disorders and pain management treatment during the period of alleged disability. The record also reflects treatment for symptomatic hip arthritis and COPD. However, treating sources did not report acute and chronic limitations in the claimant's motor functioning. Rather, the record reflects occasional episodes of minor gait and reflex limitations. As discussed above, most physical exams revealed intact strength, sensation, and coordination in the claimant, and consistently revealed unassisted gait. Similarly, the record only reflects occasional episodes of COPD symptoms, and no treating source reported signs of chronic respiratory impairment in the claimant (e.g. clubbing, cyanosis, or edema in the extremities, malaise or pallor). The record shows that the claimant received routine, conservative treatment for his allegedly disabling symptoms, and treatment notes indicate symptom improvement with treatment. Overall, the medical evidence demonstrates several limits in the claimant's physical functioning, but not of a degree that would preclude performance of light work with a sit-stand option and reduced postural activities.

[Filing No. 8-2 at 18.] In other words, the ALJ's assessment was that: (1) medical findings did not support the limitations to which Jerry B. testified; (2) Jerry B. had only received limited or conservative treatment for his conditions; and (3) Jerry B.'s symptoms had improved.

### 1. Medical Findings

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *5. However, an ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* "In evaluating an individual's

symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement … that [the allegations are (or are not) supported or consistent.'" *Id.*

Here, The ALJ found that "the objective medical evidence of record indicates greater physical functioning than described in the hearing testimony." [Filing No. 8-2 at 18.] The ALJ then summarized Jerry B.'s medical records at some length. [Filing No. 8-2 at 18-21.] However, a "summary is not analysis, as it does not explain *why* the evidence summarized undermined [claimant's] statements about his symptoms or limitations, or which statements were inconsistent." *Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)). *See also Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (remanding because the "[t]he ALJ did not really explain, for example, why he did not believe [claimant's] testimony that he could not walk more than a very short distance and had to lie down several times during the day to manage his pain.") Without an explanation tying the medical evidence to Jerry B.'s claimed symptoms, the ALJ failed to create the required bridge between the evidence and her finding. This omission is an error that leaves a significant gap in the ALJ reasoning.

### 2. Limited or Conservative Treatment

The nature and frequency of treatment sought by a claimant is an appropriate consideration. *See, e.g.*, 20 C.F.R. § 416.929(c)(3); *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (affirming ALJ's subjective symptom assessment where record showed "little in the way of actual treatment"). SSR 16-3p does not require ALJs to ask a claimant about his or her failure to seek treatment, rather, "[t]hat rule provides that an ALJ must *consider* possible reasons for a failure to seek treatment." *Deborah M.*, 994 F.3d at 790 (emphasis added). "An ALJ can, by and large, discount a claimant's testimony in light of routine and conservative treatment, so long as the ALJ

does not unreasonably minimize the extent of the claimant's treatment, play doctor, or make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance." *Annette S. v. Saul*, 2021 WL 1946342, at *12 (N.D. Ill. May 14, 2021).

Here, the ALJ asked Jerry B. during the hearing why he had not followed up on physical therapy treatments, and Jerry B. told the ALJ that years ago he had a bad experience with a chiropractor. [Filing No. 8-2 at 39.] However, the ALJ did not analyze this statement in the decision or otherwise discuss reasons why Jerry B. may not have followed through on his treatments or limited his treatment. *See Deborah M.*, 994 F.3d at 790 (noting that SSR 16-3p requires the ALJ to consider possible reasons for a lack of treatment). Furthermore, beyond attending physical therapy appointments, it is unclear what other treatment options the ALJ believes Jerry B. could have pursued as more aggressive treatments to match his reported symptoms. *See id.* ("[A]n ALJ must not succumb to the temptation to play doctor.") (internal quotation marks omitted). For these reasons, the ALJ's reasoning for discounting Jerry B.'s symptoms because he "received conservative, routine treatment" is also insufficient.

### 3. Improvement with Treatment

The ALJ also cited Jerry B's "symptom improvement with treatment" as a basis for discounting his reported symptoms. [Filing No. 8-2 at 18.] But, as Jerry B. notes in his briefing, the ALJ does not identify which of his reported symptoms improved. The ALJ's only mention of improvement with treatment is from two emergency room visits: (1) a citation to Jerry B.'s respiratory distress improving after he received nebulizer treatment and IV steroids; (2) and a citation to Jerry B.'s back pain improving with a Toradol injection in the emergency room. [Filing No. 8-2 at 20.] It is a stretch to call stabilization after arriving at an emergency room as an

improvement in symptoms. *See, e.g.*, *Herron v. Colvin*, 2014 WL 6607179, at \*7 (E.D. Wis. Nov. 19, 2014) ("A person's symptoms might improve from severe to moderate and yet still be disabling. Improvement alone does not suggest absence of a disability."). In short, the ALJ gave little explanation what improvements with treatment undercut which of Jerry B's reported symptoms. Thus, this reason is also insufficient.

### 4. Third-Party Sources

An ALJ must consider any statements made by third-party sources "in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence on file." SSR 16-3p, 2017 WL 5180304, at \*7. *See also Dawman v. Saul*, 2021 WL 4146159, at \*3 (N.D. Ind. Sept. 10, 2021) (remanding where the ALJ "failed to explain the inconsistencies found between the [third-party] report and the record"). Here, Jerry B.'s friend, Jamie Sue Bryant, provided a third-party function report. [Filing No. 8-6 at 33-44.] The ALJ did not discuss Ms. Bryant's third-party report at all, let alone with respect to consistencies with Jerry B.'s subjective symptom statements and other evidence in the record. The ALJ's subjective symptom finding is defective for this additional reason.

\* \* \*

In summary, the ALJ's subjective symptom analysis is defective for the reasons cited above. While "[n]ot all of the ALJ's reasons but be valid," *Halsell*, 357 F. App'x at 722, here the analysis cannot be saved because the undersigned is unable "to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record," *Murphy*, 759 F.3d at 816, because of the lack of sufficient explanation tying evidence to Jerry B.'s reported symptoms. Therefore, the undersigned **RECOMMENDS** the

Court **REVERSE** and **REMAND** this case so that the ALJ can satisfy the subjective-symptom analysis requirements in SSR 16-3p.

### B. Medical Opinions

Jerry B. next contends that the ALJ erred in her assessment of various medical opinions in the record. [Filing No. 14 at 13.]

Because Jerry B. filed his application after March 2017, 20 C.F.R. § 416.920c governs the analysis of medical opinions. Under this framework, ALJs will evaluate all medical opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c. The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 416.920c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the two factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 416.920c(b).

For an opinion to be "supportable," it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Similarly, for an opinion to be "consistent," it must be, reductively, consistent with the record. 20 C.F.R. § 416.920c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the

claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 1. Nurse Koehl

First, Jerry B. contends that the ALJ did not give good reasons for rejecting some of the limitations imposed by Amanda Koehl, a nurse practitioner working with Jerry B.'s primary care physician. [Filing No. 14 at 14.] The ALJ expressly rejected the portion of Nurse Koehl's opinion that Jerry B. could not sit, stand, or walk for more than two hours in an 8-hour workday, finding such a limitation was inconsistent with other records from Nurse Koehl, subsequent treatment records, and other medical opinions in the record. [Filing No. 11-2 at 22.] Jerry B. faults the ALJ for not identifying specifically which records were inconsistent with this limitation and for ignoring records consistent with Jerry B. not being able to sit, stand, or walk for more than two hours. [Filing No. 14 at 15-16.] Jerry B. also says the ALJ "did not address [Nurse Koehl's] other conclusions, namely, that [Jerry B.] (1) never can climb, stoop, crouch, or crawl, (2) cannot perform activities like shopping or walking a block at a reasonable pace on rough or uneven surfaces, (3) would likely be off task 25 percent or more of the workday, and (4) would likely be absent 'at least 1/2' of workdays each month." [Filing No. 14 at 16-17.]

In response, the Commissioner argues that as to Nurse Koehl, the ALJ "clearly expressed which portions of her opinion she found persuasive, and which she did not, and why." [Filing No. 16 at 5.] The Commissioner says that the ALJ explained that Nurse Koehl's standing and walking limitations were inconsistent with later notes from Nurse Koehl, as well as treatment notes of other providers. [Filing No. 16 at 6.] And, further, that Nurse Koehl's later notes were consistent with findings of the state agency consultants. [Filing No. 16 at 6.]

In reply, Jerry B. again reiterates that the ALJ's explanation for rejecting a portion of Nurse Koehl's opinion is not adequately explained, and, furthermore, he says that the ALJ ignored subsequent records indicating that support Nurse Koehl's standing and walking opinion. [Filing No. 17 at 8-9.] Jerry B. also faults the Commissioner for not responding to his argument that it was error for the ALJ not to address Nurse Koehl's conclusion that Jerry B. (1) never can climb, stoop, crouch, or crawl, (2) cannot perform activities like shopping or walking a block at a reasonable pace on rough or uneven surfaces, (3) would likely be off task 25 percent or more of the workday, and (4) would likely be absent at least 1/2 of workdays each month. [Filing No. 17 at 9.]

Here, the two state agency reviewers opined that Jerry B. was limited to "occasional" climbing of ramps and stairs, stooping, crouching, and crawling. [Filing No. 8-3 at 10 (Dr. J. Sands, M.D.); Filing No. 8-3 at 23 (Dr. J.V. Corcoran, M.D.).] On the other hand, Nurse Koehl opined that Jerry B. could "never" climb, stoop, crouch, and crawl. [Filing No. 8-7 at 90.] In her decision, the ALJ found the state agency reviewers' opinion "persuasive regarding exertional activities … [and] postural activities." [Filing No. 8-2 at 22.] The ALJ found Nurse Koehl's opinion "persuasive regarding lifting limits and reductions in prolonged standing and sitting, but not persuasive regarding an inability to work more than four hours in an eight-hour workday." [Filing No. 8-2 at 22.] In the RFC finding, the ALJ concluded that Jerry B. could "occasionally climb ramps or stairs; occasionally stoop kneel, crouch and crawl." [Filing No. 8-2 at 17.] However, the ALJ never addressed how persuasive she found the portion of Nurse Koehl's opinion addressing these postural limitations or explain why she did not adopt this portion of Nurse Koehl's opinion. The ALJ had an obligation to address the postural portion of Nurse Koehl's opinion and the failure to do so was error. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("It is not

enough for the ALJ to address mere portions of a doctor's report."); 20 C.F.R. 416.920c(b)(3) (requiring ALJs to articulate why they are adopting a particular opinion on an issue when the opinions "are not exactly the same").

Likewise, the ALJ also should have addressed why she rejected Nurse Koehl's opinion addressing certain mental limitations, like absences and time off task. The ALJ found that "no acceptable medical source of record has diagnosed the claimant with a medically determinable mental impairment." [Filing No. 8-2 at 22.] But, the ALJ did not address Nurse Koehl's opinion on Jerry B.'s mental limitations. The ALJ's statement about the lack diagnoses is insufficient. It may be that the ALJ found that Nurse Koehl's opinion unpersuasive because of the lack of supporting medical records and because Nurse Koehl's is not a specialist in this area, but the ALJ had an obligation to say as much in the decision. Therefore, the ALJ should address this issue on remand as well.

### 2.  Other Medical Opinion Issues

Jerry B. raises other issues related to the ALJ's evaluation of the opinions of Nurse Koehl and the state agency reviewers. [Filing No. 14 at 17-18.] Because the undersigned finds the errors described above warrant remand, the Court declines to address those issues specifically but the ALJ should take care on remand to connect her findings regarding the persuasiveness of the opinions to the record evidence.

For the reasons identified above, the undersigned **RECOMMENDS** the Court **REVERSE** and **REMAND** this case so that the ALJ can fully evaluate and articulate her findings regarding all medical opinions in the record as required by 20 C.F.R. § 416.920c.

### C.  Listing 3.02 (Chronic Respiratory Disorders)

Jerry B. contends that the record evidence establishes that he meets Listing 3.02 and therefore the ALJ erred by not addressing this evidence and finding him disabled.  [Filing No. 14 at 19.]  In support of this argument, he points to the results of a November 21, 2019 pulmonology function test performed during a visit to Dr. William Byron, M.D. using a portable spirograph that showed a FEV$_1$ of 1.55 (or 43%).[6]  [Filing No. 14 at 19-20 (citing Filing No. 8-7 at 227).]  Jerry B. says that given his age (50 years) and height (68 inches), a FEV$_1$ score of 1.55 meets the criteria for Listing 3.02.  [Filing No. 14 at 20.]  He says the ALJ ignored this evidence and had the ALJ considered it, she would have been required to find him disabled.  [Filing No. 14 at 19-20.]

In response, the Commissioner says that the ALJ did consider the results of the November 2019 spirograph test, it is just located in a subsequent portion of the decision.  [Filing No. 16 at 9.] In any event, under Listing 3.02(A), the pulmonology test itself is required to meet certain criteria, which Jerry B.'s portable spirograph test does not satisfy.  [Filing No. 16 at 10.]  In particular, the Commissioner says Jerry B.'s test does not indicate "his level of cooperation, whether bronchodilation was repeated due to a low volume, nor is there a full report showing any tracings." [Filing No. 16 at 10.]

In reply, Jerry B. argues that the ALJ did not consider the November 2019 spirometry result, rather, the ALJ merely mentioned the visit to Dr. Byron in November 2019 but did not discuss the spirograph test.  [Filing No. 17 at 10.]  Next, he responds that the ALJ provided no discussion about whether Jerry B.'s testing met the criteria for spirograph tests at Step Three, so it is impossible to know why the ALJ dismissed the results of the test.  [Filing No. 17 at 11.]

---

[6] Forced expiratory volume ("FEV") measures how much air a person can exhale during a forced breath.  *See* Taber's Medical Dictionary Online (23d ed. 2017).

Listing 3.02 provides that an individual is considered disabled as a result of "chronic respiratory disorders due to any cause except CF with A, B, C, or D." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02. As applicable here, the subsection (A) criterion required Jerry B. to show that he had an $FEV_1$ less than or equal to specified values based on his "age, gender, and height without shoes." *Id.* at § 3.02(A). Here, based on Jerry B.'s height and age, an $FEV_1$ score of less than 1.60 meets the criterion in subsection (A). The test cited by Jerry B. showed a result of 1.55.

The explanatory notes preceding Listing 3.02 explain the "requirements for an acceptable test and report" to demonstrate a valid $FEV_1$ score for purposes of the Listing. They provide, in relevant part, as follows: that "forced expiratory maneuvers must be satisfactory," *id.* at § 3.00(E)(2)(c), and that the spirometry report must include "[a]ny factors, if applicable, that can affect the interpretation of the test results (for example, your cooperation or effort in doing the test)," *id.* at § 3.00(E)(3)(b). Thus, these regulations confirm that the ALJ is qualified to assess the medical testing as part of the duty to assess and weigh all of the medical evidence in the record.

Here, however, the ALJ's reasoning (or lack thereof) leaves the Court in the dark as to why the November 2019 spirometry report was not acceptable. The ALJ simply stated that "[t]he severity of [Jerry B.'s] COPD does not meet … any listing under section 3.02 because the evidence does not demonstrate the required $FEV_1$ … levels [of less than 1.60]." [Filing No. 8-2 at 17.] The Court agrees with Jerry B. that, reading the ALJ decision as a whole, it is unclear whether the ALJ even considered the November 2019 test results as part of evaluating whether Jerry B. met Listing 3.02. It may well be the case that the November 2019 test does not meet the standards in the regulations, but the ALJ has an obligation to explain as much. *See, e.g.*, *Clark v. Berryhill*, 2017 WL 6547458, at *5 (N.D. Ind. Dec. 21, 2017) ("It is unclear to this court why the ALJ did not

accept this testing as meeting the Listing.  Accordingly, this Court remands the issue of Listing 3.02A for a more detailed analysis as the current analysis is too limited to permit proper review.").

Therefore, the undersigned **RECOMMENDS** the Court **REVERSE** and **REMAND** this case so that the ALJ can consider all evidence and fully articulate her findings regarding whether Jerry B. meets Listing 3.02.

### D.  RFC, Hypothetical, and DOT Jobs

Jerry B. advances additional arguments, including that the RFC and hypothetical posed to the VE failed to capture of all of his documented limitations and therefore the DOT jobs that the VE opined that Jerry B. can perform are likewise beyond his documented limitations.  [*See* Filing No. 14 at 20-27.]  The Court need not address these arguments because remand is necessary to address the issues identified above, which may impact the RFC finding.  On remand, the ALJ should take care to create and accurate and logical bridge between the evidence and the RFC finding and confront contrary lines of evidence in the record.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned recommends the Court **REVERSE** the ALJ's decision denying Jerry B. benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 7/29/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**<u>Distribution via ECF to all counsel of record.</u>**